**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

Case No.  HL 10-01275

JAMES C. MULHOLLAND, JR.,

Debtor(s).

_____/

ROBERT CALDER,

Plaintiff,

vs.                                                      Adv. Pro. No.  10-80458

JAMES C. MULHOLLAND, JR.,

Defendant.

_____/

<div style="border:1px solid black; text-align:center;">

NOT FOR PUBLICATION

</div>

**MEMORANDUM RE: PLAINTIFF'S FEBRUARY 3, 2011 MOTION -**
**DEFAULT JUDGMENT**

Plaintiff has filed a motion for default judgment in this adversary proceeding.  *Cf.* FED. R.

BANKR. P. 7055 and FED. R. CIV. P. 55(b)(2).  The motion requests that the judgment deny the

granting of Debtor's discharge in connection with his Chapter 7 case.

The court takes judicial notice that a default was entered against Defendant on August 16,

2010 and, after that default was set aside, a second default was entered against Defendant on January

10, 2011 (DN 18).  The court further finds that Defendant received proper notice of Plaintiff's

February 3, 2011 motion for default judgment. In fact, Defendant appeared at the March 3, 2011 hearing, at which time his request to set aside the second default was denied.

The court then adjourned the hearing to April 14, 2011 so that it could review both Plaintiff's affidavit and other documents Plaintiff submitted in support of the motion. The court has now reviewed the same and has determined that the requested judgment may enter without further hearing. This memorandum sets forth the court's reasons for granting the motion.

Plaintiff bases his objection to discharge upon 11 U.S.C. § 727(a)(2)(A). It states that the court shall not grant a debtor his discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of filing of the petition; or

* * *

Plaintiff contends that Debtor, together with his brother, operated an investment scam and that the scam included a Ponzi scheme that resulted in creditors being defrauded within the year preceding Debtor's February 5, 2010 bankruptcy filing. A Ponzi scheme can have many variations. However, all such schemes have the general theme of the perpetrator tricking new investors into providing him with money that he then turns over to past investors on the pretext that the money represents profits or principal associated with their investments. A Ponzi scheme will inevitably involve a fraudulent taking within the meaning of Section 727(a)(2)(A) because: (1) all new investors become creditors of the perpetrator as a consequence of the scheme; and (2) there is a fraudulent taking of their money because the perpetrator knows or should know at the time the

2

money is taken that these new investors will lose their investment due to the scheme's eventual collapse.

The court finds from Plaintiff's submissions that Debtor in fact was running a Ponzi scheme and that Debtor fraudulently took money from Plaintiff and others in furtherance of that scheme during the year preceding Debtor's February 5, 2010 bankruptcy filing. Based upon a comparison of Plaintiff's investment with the investments made by other creditors who have filed adversary proceedings against Defendant, it appears that Plaintiff's investment with Debtor was characteristic of the investments typically being made in connection with the program offered by Debtor and his brother.

The two operated under the name Mulholland Financial, Inc., although Mulholland Financial actually ceased being a corporation in 2006. Debtor had been a licensed insurance agent and he had apparently offered a similar investment program for a number of years in conjunction with his insurance business. However, Debtor lost his license in November 2006 as part of a consent order involving an investigation of that investment program. Nonetheless, Debtor continued to offer the program to new investors through at least 2009.

Plaintiff's first investment with Debtor and his brother occurred in 2004 while Debtor was still an agent employed by Jackson National Life Insurance Co. Debtor offered the program as an alternative to the traditional investment vehicles provided by Jackson National. Debtor's program contemplated money being "loaned" to Debtor and his brother in exchange for a demand note that promised both interest at 7% and the return of the principal amount at any time upon thirty days notice. Debtor represented that Plaintiff's loans would be used to buy rental properties and that his

3

investment was without risk because his investment was secured by at least $15 million in unencumbered assets owned by Debtor and his brother.

Plaintiff's initial "loan" was $60,000. However, over the next five years Plaintiff periodically invested more, with his last investment of $29,500 being made on June 15, 2009. Debtor would always issue a new promissory note each time a new investment was made, with the new note evidencing the total investment together with all accrued interest. Therefore, when Debtor made his June 15, 2009 investment, Debtor replaced the previous note with a new demand note dated June 15, 2009. The amount of that note was $139,414.06.

Whether Debtor and his brother ever had $15,000,000 in unencumbered assets is doubtful. In any event, Debtor's schedules filed in this case indicate that his scheduled assets totaled only $1,273,415 after deducting the secured debt set forth in his Schedule D. As such, it is fair to conclude that Debtor's net worth was substantially less than what he represented when he took the last $29,500 investment from Plaintiff on June 15, 2009. Indeed, based upon Debtor's Schedule F and upon Debtor's custom of issuing a note whenever a new investment was made, the court concludes that Debtor and his brother took similar investments from many others in 2009, with one investment occurring as late as December 22, 2009. As such, it is clear that Debtor could not have honestly believed with respect to these late investments that he had assets securing their repayment or that there was any possibility of those persons ever recovering what they had paid to him, let alone the return he continued to promise. Indeed, it is clear from another exhibit offered by Plaintiff that most, if not all, of what Debtor was collecting from Plaintiff and those other investors in 2009 was going to repay past investors, which, of course, is a classic characteristic of a Ponzi scheme.

4

Therefore, this court is well satisfied that the money Debtor took from Plaintiff on June 15, 2009, as well as the additional amounts that he took from other investors after February 5, 2009, was then fraudulently transferred to other prior investors, thereby leaving Plaintiff and these others with worthless claims against him. As such, Debtor is not entitled to a discharge under Section 727(a)(2)(A).

The court will prepare a separate order consistent with this memorandum.

_____  4/18/11
Hon. Jeffrey R. Hughes
United States Bankruptcy Judge


Signed this 18th day of ___April___, 2011
at Grand Rapids, Michigan.

5